```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08CR457 CEJ |
| | ) | (FRB) |
| RONALD LEON ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed a Motion To Suppress Evidence (Docket No. 18). Testimony and evidence was adduced on the defendant's motion at a hearing before the undersigned on September 22, 2008. At the close of the hearing counsel for the defendant asked for and was granted until September 29, 2008, to submit additional briefing on the issues raised in defendant's motion. On September 29, 2008, counsel for the defendant informed the court by letter that he was foregoing the opportunity to submit additional briefing on the motion. (See Docket No. 27).

From the testimony and evidence adduced on the defendant's motion, the undersigned makes the following findings of fact and conclusions of law:

## **Findings Of Fact**

On February 8, 2008, at about 10:30 p.m., John Scott, Chief of the Edgar Springs, Missouri, Police Department received a citizen complaint about loud noise emanating from the 100 block of Walnut Street in Edgar Springs. Chief Scott drove to that vicinity in his police car to investigate the complaint. As he neared the area he could hear what appeared to be loud music. Chief Scott determined that the noise was coming from a mobile home residence located at 98 Walnut Street. Chief Scott was familiar with the residence as he had been there on 4 or 5 prior occasions. He knew it to be the residence of Ronald Leon Robinson, the defendant here.

Upon arriving at the residence Chief Scott saw a vehicle parked near the residence which he recognized as a vehicle belonging to Ronald Robinson. There was a second vehicle parked next to Robinson's which Chief Scott did not recognize. On the previous occasions when Chief Scott had been to the residence there were other persons present in the residence in addition to Ronald Leon Robinson.

Chief Scott parked his police car in front of the residence. He got out of the car and walked up on the front porch of the residence. He knocked on the door and identified himself. From inside the residence someone responded, "Go away." Chief Scott knocked and identified himself several more times in an effort to get someone to answer the door. After doing so there was

a response from inside the residence by a voice that Chief Scott recognized as Ronald Robinson. Robinson said, "Get the fuck off my porch or I will shoot you." Chief Scott then heard two shots and saw two flashes inside the residence. Chief Scott jumped off the porch and took cover behind his police car. Using his police radio he then called for assistance from other officers in the area. Eventually other officers from the Rolla, Missouri, Police Department, Phelps County Sheriff's Department, the Missouri State Highway Patrol, and several other law enforcement agencies arrived in the area to assist Chief Scott. An ambulance also came to the scene.

At about 11:30 p.m. Robinson came out of the residence. Several times officers ordered him to get down on the ground. He did not comply. Eventually, Robinson got on the ground. He continued to resist as the officer attempted to handcuff him. At one point he told the officers to just go ahead and shoot him. Robinson was handcuffed, placed under arrest and put into a police vehicle. No weapon was seen or found on Robinson.

Immediately after Robinson was subdued several officers, led by Sergeant John Frey, of the Rolla, Missouri, Police Department, went into the residence to see if there were any other persons, either suspects or victims, inside the residence. The officers looked quickly through the residence, including looking into various rooms. They found no one. This initial "sweep" of

the residence lasted about two minutes. At that point several other officers entered the residence to do a more detailed search to look for persons, either suspects or victims, who might be hiding or hidden in the residence. This more detailed search included looking into closets and other areas where a person might hide or be hidden. This second search lasted about five minutes.

One of the officers participating in the second, more detailed, sweep was Officer Jose Rodriguez, of the Rolla, Missouri, Police Department. Officer Rodriguez went into the kitchen area of the residence. In that area he saw a cabinet that was approximately two and one-half feet tall. (See Defendant's Exhibit C). Several of the drawers in the cabinet were open and in one of them Officer Rodriguez saw a box of .22 caliber shells. (See Government's Exhibit 6). The box of shells was subsequently seized as evidence. There were two doors to the cabinet, one of which was slightly ajar. Because the cabinet appeared large enough for a person to hide or be hidden in, Officer Rodriguez opened the cabinet door. When he did so he saw that the wooden floor of the cabinet was moved and he could see a gun on the floor of the cabinet area. (See Government's Exhibit 5). The gun was subsequently seized as evidence.

Also while inside the residence the officers saw two shell casings on the floor of the front room. These were also seized. The officers also saw two bullet holes in the wall

paneling of the front room. (<u>See</u> Government's Exhibits 3 and 4).

**<u>Discussion</u>**

As grounds to suppress the evidence seized from his residence on February 8, 2008, the defendant avers in his motion that the search of, and seizure of items from, his residence was unlawful because made and done without a warrant and not in accordance with one of the recognized exceptions to the warrant requirement of the Fourth Amendment. Specifically, the defendant avers that the officers had no reasonable suspicion to support the belief that a protective sweep of the residence was appropriate and that if appropriate, the scope of the search exceeded that permitted under the protective sweep doctrine.

One well recognized exception to the warrant requirement of the Fourth Amendment is the existence of exigent circumstances which will dispense with the requirement of a warrant. Exigent circumstances may exist justifying a warrantless entry of a dwelling where the safety of law enforcement officers or others is threatened. <u>Warden v. Hayden</u>, 387 U.S. 294, 298-99 (1967). In <u>Maryland v. Buie</u>, 494 U.S. 325 (1990) the Supreme Court held that police making an arrest of an individual inside a home may make a brief cursory search of the premises if they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those

on the arrest scene." Id. at 334. The sweep may include a cursory inspection of those places where a person may be found. Id. at 335. Such protective searches are permitted even though the subject is arrested adjacent to or outside the residence, if justified by a belief that the officers might be in danger from others inside the residence. United States v. Bruton, 647 F.2d 818, 822-23 (8th Cir. 1981). See also United States v. Paopao, 469 F.3d 760, 766 (9th Cir. 2006).

The officers here had a reasonable articulable suspicion to conduct a protective sweep of Robinson's residence following his arrest. Chief Scott had been fired upon by someone inside the residence. When Robinson finally came out of the residence he continued to resist commands of the officers and resisted when they attempted to subdue him. He made references that the officers should shoot him. Robinson did not have a firearm with him when he came out of the residence. Thus the officers could reasonably believe that the firearm which had previously been discharged was still in the residence. United States v. Antwine, 873 F.2d 1144, 1145-47 (8th Cir. 1989); United States v. Janis, 387 F.3d 682, 687-88 (8th Cir. 2004); United States v. Arcobasso, 882 F.2d 1304, 1306 (8th Cir. 1989). Further, there were two vehicles parked near the residence, only one of which the officers recognized as belonging to Robinson. It was reasonable to infer that the second vehicle might belong to another person who was inside the residence. See

United States v. Davis, 471 F.3d 938, 945 (8th Cir. 2006)(Presence of several vehicles near premises could indicate presence of others). Also, on the several other occasions when Chief Scott had been at the residence, persons other than Robinson were also there. All of this created a reasonable belief by the officers that there might be an individual or individuals inside the residence who might be armed and constitute a danger to themselves or others in the area. Also, since shots had been fired inside the residence it was reasonable for the officers to be concerned that a shooting victim might be in the residence. Thus, these "exigent circumstances" allowed the officers to lawfully enter the residence to conduct a brief search of the residence to locate any other suspects or potential victims inside the residence.

The shell casings found on the living room floor of the residence, the bullet holes seen in the wall paneling in the living room area, and the box of bullets found in the open drawer of the kitchen cabinet were all found in plain view of the officers during their lawful protective sweep of the residence. The observation and seizure of the items of physical evidence were therefore lawful. Coolidge v. New Hampshire, 403 U.S. 443 (1971); United States v. Arcabasso, 882 F.2d 1304, 1307 (8th Cir. 1989). These items would have been evidence of the assault committed by the defendant upon Chief Scott by firing on him as Chief Scott stood on the front porch of the residence.

Officer Rodriguez opened the cabinet door because it was partially open and from the size of the cabinet it appeared to him to be large enough that a person could hide inside of it. Looking into the cabinet to determine if it concealed someone was permissible as part of the protective sweep. Maryland v. Buie, 494 U.S. 325, 335 (1990). Once the cabinet door was opened Officer Rodriguez was able to see the gun in plain view. Again, the gun would be evidence of the assault upon Chief Scott, and its seizure was lawful. Coolidge, supra; Arcobasso, supra.

### Conclusion

For all of the foregoing reasons the defendant's Motion To Suppress Evidence should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant Ronald Leon Robinson's Motion To Suppress Evidence (Docket No. 18) be denied.

The parties are advised that they have to and including **November 24, 2008,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).



UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of November, 2008.